IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN SAPIENZA, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 06 C 5599 |
| FOREST PRESERVE DISTRICT OF COOK COUNTY, et al., | ) ) ) Judge Manning |
| | ) Magistrate Judge Cole |
| Defendants. | ) |

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff initially sought permission to file a Second Amended Complaint to add a Monell claim for municipal liability on September 12, 2007. He also moved to extend discovery and to compel discovery in connection with his proposed amendment of the complaint. I denied the motion to amend, and the defendants agreed to produce Commander Syzmanski for deposition. [*See* Docket No. 57]. No appeal was taken from this order. The only thing that has occurred thereafter was that Commander Syzmanski was deposed. Nothing was revealed in that deposition that could by any measure be considered an epiphany – or, in the plaintiff's words, to have resulted in the sudden "crystalliz[ation]" of the theory of municipal liability that purportedly formed the basis for the plaintiff's renewed motion to amend, which was filed on November 2, 2007.

The proposed pleading did not accompany the motion. Nonetheless, I gave permission to file conditionally a Second Amended Complaint solely because Mr. Sapienza's counsel represented that the statute of limitations would otherwise run. The filing was subject to being stricken upon further review of the defendants' objections. [*See* Docket No. 65].

Plaintiff claimed at the hearing that he would not need to take "much more discovery" if the amendment were allowed – how much more, he did not say, and discovery had closed months earlier. Yet, the "Amended Rule 26 Disclosures" provided in conjunction with the initial motion to amend the complaint listed at least 20 new witnesses related to establishing a claim for municipal liability. (*See* Ex. B to Defendants' Second Response to Plaintiff's Second Motion for Leave to File a Second Amended Complaint)("Defendants' Second Response"). By any standard, this would result in an extraordinary expansion of discovery long after discovery has already closed.

Almost from the beginning of the case, the plaintiff has known of the ordinances that underlay the charges leveled against him in November 2005 by the Park District, and he knew every particular of the massively conflicting versions of the events that led to charges. The defendants contended that Mr. Sapienza was in the forest looking for a homosexual tryst and that he grabbed the genitals of one of the officers. Mr. Sapienza denied it and insisted that the police officers had falsely accused him of "flashing" young girls. (*See* Complaint, Docket No. 1; First Amended Complaint, Docket No. 7).

According to the Complaint and the First Amended Complaint, the officers walked him to his car where he had told them he kept his identification. Although he told them that they did not have permission to search his car, one of the officers "grabbed Mr. Sapienza's key from his hand and opened the door." The officers searched the car and told him to "shut the fuck up; I'll do what I want to do." *Id.* at ¶ 11. Upon finding a weapon in the car, Mr. Sapienza was arrested. Thereafter, the defendant officers "then conspired, agreed, and discussed among themselves how to falsely charge Mr. Sapienza to cover up for the illegal arrest, search, and seizure of Mr. Sapienza." *Id.* at ¶ 13. The grabbing-of-the-genitals story, and the "knowingly" false police reports and charges of battery and

2

disorderly conduct were the result of this conspiracy. *Id.* at ¶¶ 13-14.

The Second Amended Complaint repeated the identical allegations that had appeared in its two predecessors. (*See* Second Amended Complaint, ¶¶ 9-16, Docket No. 64). It purported to add a claim under Monell as Count III, which alleged that the false arrest, and unconstitutional search and seizure were caused by the customs, policies, ordinances and practices of the Park District. Id. at ¶ 19. The supposedly unconstitutional FPDCC Ordinances alleged to have given rise to the violations were 3-3-1 and 3-3-5. However, these ordinances, like the underlying versions of events, were known to Mr. Sapienza from the time of his arrest and certainly from the time the Complaint was filed in October 2006.

The defendants have objected to the second motion to file a Second Amended Complaint.

## FACTUAL BACKGROUND

Mr. Sapienza was charged with battery and violation of Forest Preserve Ordinance 3-3-1 J for having a gun on forest preserve property. This suit followed. Count I of the Complaint was entitled "Against Officers for Section 1983 Fourth Amendment Violations" and alleged illegal search and seizure. Count II was entitled "745 ILCS 10/9-102" and sought liability as to the Cook County Forest Preserve District under a respondeat superior theory. Count III was entitled "False Arrest - State Claim FRDCC and Officers" and charged that the plaintiff was arrested on false charges for which there was no probable cause. Count IV was entitled "Malicious Prosecution - State Claim Against FPDCC and Officers" and alleged plaintiff was maliciously prosecuted. Count V was entitled "Intentional Infliction of Emotional Distress Against FPDCC and Officers." (See Exhibit D, Defendants' Second Response).

The Complaint and First Amended Complaint both told the same story of how the officers

3

had falsely accused him of flashing young girls, had "knowingly" searched his car in violation of the constitution[1] and had arrested him, "knowing" that they were doing so without "probable cause," and thereafter, pursuant to the conspiracy, "maliciously prosecute[d] [him] on false charges for which they knew there was no probable cause." (Complaint ¶18, Counts II-III). All of this knowingly illegal conduct was performed "with the intent of inflicting severe emotional distress on the plaintiff. . . ." (Complaint Count IV, ¶19).

Here is Mr. Sapienza's version of the incident as he recounted it at his deposition:

"Well, I wanted to stretch out and exercise. There was a nice big tree right there, so I got off the road and started stretching. * * * And as I stepped around the tree, it was a very large tree, a gentleman that I now know was a police officer, we almost bumped into each other. And he jumped back and I - I was surprised, too, and we both jumped backwards. * * * I believe, I said, excuse me, and I turned around and decided to use a different path. I turned my back to him and started walking away from him. * * * I took maybe 10 to 15 steps away from -- after - away from the tree and heard somebody yelling. * * * He said, stop, you fucking pervert, stop. I seen you. Then he went on to say, I seen you flash those girls, or something to that effect. * * * [H]e kept saying that and I didn't know who he was talking to, and I just kept walking. Then I started to look around, you know. I was the only one around there. * * * When I turned around as this -- the younger officer said, I'm a police officer, too. Because the other guy said, stop, police, stop, police, you pervert. * * * Well, I turned around and looked at him, and I said, so what. And the other guy - the one that was screaming got closer and closer and kept calling me a pervert. And he said, I ought to beat your fucking ass. And I said, for what. * * * He says, I know you were - he said, I know you were - exposed yourself to the girls - or exposed myself or I flashed or one of the words he used. * * * I said - I announced my office. I said I was a public defender investigator and my IDs are in the car. * * * I said, are you fucking crazy. I didn't do anything like that. * * * I said, my IDs are on the seat of the car in my bag and I give you permission to open up my car to take my IDs out of the bag. * * * The younger officer was questioning me and said - and said - while the other guy was searching the car said, you know, we're going to get you for something. You better admit to trying to grab me. I said, are you nuts? I said, we almost bumped into each other. I never grabbed you. Don't give me that shit. * * * [The other officer] was looking underneath my seat, and he started to search the car. * * * Yeah, he - it was

---

[1] As discussed below, at his deposition, Mr. Sapienza said he invited the police to open his car and take his IDs out

4

a four-door car. He opened the back door, and he looked in the trunk, and then he finally went back to the driver's side and then found my weapon in the - I don't know what you call it, the console that I have." (Exhibit E, at 108-25, Defendants' Second Response).

Officer Obora completed an Offense Incident Report for the arrest that day. It stated:

"Reporting Officer along with Officer Shukstor were on a plainclothes detail * * *. Reporting Officer noticed Steven Sapienza standing in the wooded area, rubbing his genital area through his pants. Reporting Officer approached him and was standing across from him and nodded at him. At this time Mr. Sapienza reached and attempted to grab reporting officer's genital area, but reporting officer blocked the area with reporting officer's hand, which is where Mr. Sapienza made contact. At this time Officer Shukstor walked up and reporting officer identified himself as a police officer as well as Officer Shukstor. Mr. Sapienza was placed in handcuffs by Officer Shukstor. At this time reporting officer asked him for I.D. He stated it was in his car. Reporting officers walked him to his car, and Officer Shukstor, using Mr. Sapienza's keys, opened the car and looked for his wallet in the center console, when Officer Shukstor found a handgun. Mr. Sapienza stated he was a private investigator, but we could not confirm his status or authorization of firearms card. Arrestee was taken to Maybrook lock up and his car towed."

(See Exhibit F to the Defendants' Second Response).

The Second Amended Complaint sought to add a claim for municipal liability based on: "(a) the enactment, maintenance, and enforcement of unconstitutional FPDCC Ordinances 3-3-1 and 33-5;" and "(b) the willful, wanton, and deliberately indifferent failure to train and supervise police officers in constitutional law enforcement practices, which results in widespread unconstitutional seizures violative of the Fourth Amendment." (See, Ex. G to Defendants' Second Response at ¶ 20).

No new evidence has been developed to support plaintiff's attempt to now allege these claims beyond that long known to him through discovery in this case: Mr. Sapienza has had the ordinances to which he refers since February 2007 when they were revealed in the defendants' initial Rule 26(a) disclosures. He also has had a copy of the obscenity/indecency ordinance since May 2007. The

criminal complaint and ticket were provided to him both before and during discovery. (See Ex. C to Defendants' Second Response).

Mr. Sapienza asked about the officers' training in interrogatories, which were answered in April 2007. Plaintiff questioned the officers about their training and the ordinances at their depositions. Officer Shukstor was deposed on May 15, 2007, and Officer Obora was deposed on July 20, 2007. Mr. Sapienza asked each defendant by interrogatory: "Identify all complaints and names of complainants, including but not limited to, complaints of excessive force, false arrest, racism, false report/affidavit writing, perjury, and improper tactics, which have been lodged against you in the past five years," to which the Officers answered, "None." Plaintiff requested the Forest Preserve District produce: "Each and every document which pertains to or relates to any form of citizen's complaint, or otherwise, lodged within the last five years with Forest Preserve District of Cook County, Chicago Police Department, or any Illinois Agency, whether oral or written, whether formal or informal, which involves, relates, refers, or mentions any of the individual defendants," to which the District responded there were none. Plaintiff requested: "All documents for the last five years contained in the personnel files of each and every defendant, including but not limited to disciplinary reports, performance evaluations, complaints for excessive force, unlawful arrest, evidence tampering, witness intimidation, false report writing, and improper tactics."

The District produced the officers' personnel files containing more than 100 documents. There were no disciplinary reports or complaints for excessive force, unlawful arrest, evidence tampering, witness intimidation, false report writing, and improper tactics. The defendants answered plaintiffs discovery in April 2007.

## ANALYSIS

While Rule 15(a), Federal Rule of Civil Procedure, provides that leave to amend shall be freely given "when justice so requires," a district court may deny a plaintiff leave to amend if "there is undue delay, bad faith[,] or dilatory motive ... [, or] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). In the instant case, there has been undue delay and there will be undue prejudice if the amendment were to be allowed. No valid reason has been advanced for failing to timely amend the allegations.[2] Finally, the proposed amendment would be futile.

It certainly cannot be argued that discovery coming late in the proceedings revealed previously unknown evidence. The newly advanced theory was known or should have been known long before discovery closed. Mr. Sapienza's delay is not excusable or explainable. *Compare Primus v. United States*, 389 F.3d 231, 234 (1st Cir. 2004)(late designation of expert improper where no valid reason given for delay); *Finwall v. City of Chicago*, 239 F.R.D. 494, 496 (N.D.Ill. 2006), approved by *Finwall v. City of Chicago*, 239 F.R.D. 504 (N.D.Ill. 2006)(Manning, J.).

If the amendment would be futile, it may be denied. *Ames v. Miller*, 2007 WL 2558101 (10th Cir. 2007); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F. 3d 854, 861 (7th Cir. 2001)(collecting cases). That is the situation here. Count III of the proposed Second Amended Complaint is captioned "Section 1983 *Monell* claim," and alleges that the constitutional violations of false arrest, malicious prosecution, and illegal search and seizure were caused by the customs, policies, ordinances, and

---

[2] Mr. Sapienza has contended that he did not have sufficient information until recently to advance a claim for municipal liability. That contention is contrary to the evidence of what has occurred in this case and is based upon significant misreadings of the depositions on which the claim is based.

7

practices of the FPDCC, as promulgated, enforced, and disseminated by the FPDCC and FPDCCCPD which caused the deprivations complained of by the plaintiff.

Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978), municipal liability is limited to actions that the municipality has officially sanctioned or ordered. Municipal liability under § 1983 only attaches where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). To state a claim for municipal liability for failure to train, a plaintiff must establish that the municipality was "on notice of a pattern of constitutional violations resulting from the inadequate training." *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994). Inadequacy can serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact and where the identified training deficiencies are "closely related" to the plaintiff's ultimate injury. *See City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989).

Deliberate indifference is an exacting standard of fault requiring proof that the municipal actor disregarded known or obvious consequences of its actions. *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999). There is nothing in the complaint that could justify a conclusion that the amendment is not futile. While there is a conclusory, boilerplate allegation of a failure by the Forest Preserve District to train and supervise "officers in constitutional law enforcement practices, which results in widespread unconstitutional seizures violative of the Fourth Amendment," the actual allegations of

8

the complaint are inconsistent with the claim.[3]

*McCormick v. City of Chicago*, 230 F.3d 319, 323-324 (7th Cir. 2000) holds that federal courts must not apply a heightened pleading standard in civil rights cases alleging § 1983 municipal liability. *See also Thompson v. City of Chicago*, 2002 WL 31115578 at *3-4 (N.D.Ill. 2002)(Manning, J.). To survive a motion to dismiss, *McCormick* requires that "'a pleading must only contain enough to 'allow the court and the defendant to understand the gravamen of the plaintiff's complaint....'" The task for the court in these cases then is to determine exactly what is "enough." 230 F.3d at 323. In *McCormick*, the court held that to allege that a municipal policy has violated an individual's civil rights under § 1981 or § 1983, McCormick needed to allege that (1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

Nothing in the Second Amended Complaint supports the notion that the defendants' search of Mr. Sapienza's car, the seizure of his gun, the allegedly false police reports and the ensuing malicious prosecution were the consequence of a wide spread failure to train or a pervasive practice. Quite the contrary. According to all of the versions of the complaint, the conduct of the individual defendants was the result of conduct *known* by the police officers to have been illegal and were the consequences of a *knowingly illegal conspiracy* – not of a failure to train, as that term is used in the

---

[3] The defendants have cited cases such as *McTigue v. City of Chicago*, 680 F.3d 381 (7th Cir. 1995) and *Copeland v. Northwestern Memorial Hospital*, 964 F. Supp. 1225, 1240 (N.D. Ill. 1997) for the proposition that boilerplate allegations are insufficient to state a claim under §1983. Those cases have been at least partially abrogated by *McCormick* and others. The defendants have ignored those cases and relied on isolated statements excised from the opinions.

9

cases.[4] A complaint's allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads [himself] out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

Finally, there is no allegation that the Forest Preserve District, after being put on notice that their officers were lying to justify illegal arrests or conduct unconstitutional searches, made a choice not to train their officers. In short, the proposed Second Amended Complaint neither adequately pled the requisite policy of the Forest Preserve District, the requisite notice by the District of a pattern of constitutional violations resulting from the alleged inadequate training, nor any facts supporting a claim for deliberate indifference. The only allegations are those regarding the encounter with Mr. Sapienza. But that is not enough. If it were, every encounter would give rise to a *Monell* claim, and that, the Supreme Court said, is forbidden: Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985); *Ramirez v. County of Los Angeles*, 397 F. Supp. 2d 1208, 1228 (C.D. Calif 2005) (plaintiff failed to create a triable issue of fact to survive summary judgment where the sole piece of evidence was the deposition of a named defendant that he had no training with respect to the violation at issue).

Plaintiff claims in Count III of the proposed Second Amended Complaint that the Forest Preserve District has a custom, policy and practice of enacting, maintaining, and enforcing unconstitutional ordinances 3-3-1 and 3-3-5. No other ordinances are pled and there is no allegation of how the ordinances are unconstitutional. Mr. Sapienza lacks standing to challenge a statute or

---

[4] The fact that all three versions of the complaint charge that the officers knowingly lied in their reports and engaged in a conspiratorial cover up is further evidence of the fact that they knew that their arrest of Mr. Sapienza, and the search of his car and the seizure of his gun were – as the pleadings explicitly charge – without probable cause.

10

ordinance that he was not charged with having violated. Plaintiff was charged with battery (720 ILCS 5/12-3(a)(2)) and for violation of ordinance 3-3-1 J for having a weapon on Forest Preserve District property. 3-3-1 J states: "Disorderly Conduct: J. All persons who shall have or carry any pistol, knife, dirk, knuckles, slingshot or other dangerous weapon concealed or about their person ... shall be deemed guilty of disorderly conduct.... " There is nothing vague or broad about this charge. Plaintiff was not charged with violating ordinance 3-3-5.

The jurisdiction of the federal courts is restricted to "cases" or "controversies." *Indiana Right to Life v. Shepard*, 2007 WL 3120095 (7th Cir. 2007). The case or controversy requirement helps preserve appropriate separation of powers between the courts and the other branches of government and provides courts with "that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Plaintiff bears the burden of establishing the required elements of standing. *MainStreet Organization of Realtors v. Calumet City*, 505 F.3d 742 (7trh Cir. 2007); *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). "Those elements are (I) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relation between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Lee*, 330 F.3d at 468. Under the "injury in fact" prong, plaintiff's injury must be "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S.555, 560 (1992).

When a plaintiff challenges the validity of a criminal statute under which he has not been prosecuted, he must show a "real and immediate threat" of his future prosecution under that statute

11

to satisfy the injury-in-fact requirement. Plaintiff has not alleged a sufficient likelihood of his future prosecution under the ordinances cited to support standing. He has never been charged with a violation of ordinance 3-3-5 or any section of ordinance 3-3-1 (other than section J) or prosecuted or threatened with prosecution under those ordinances.

## CONCLUSION

For the foregoing reasons, Mr. Mr. Sapienza's motion to file a Second Amended Complaint [Docket No. 60] is denied and the pleading conditionally filed on 11/2/07 [Docket No. 64] is stricken.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 12/28/07